## JOHNSON v. STATE.

### Opinion delivered June 29, 1908.

1. CONTEMPT—PRESUMPTION WHERE FACTS ARE RECITED IN JUDGMENT.— Where a judgment fining an attorney for contempt in filing a suggestion that the judge was disqualified recites the facts constituting the alleged contempt of court, and does not disclose that the attorney's manner was discourteous or disrespectful to the court, or that he was guilty of any contemptuous conduct, it will be presumed that there was no objectionable conduct other than the filing of the suggestion. (Page 47.)

2. SAME—FILING VEXATIOUS MOTIONS.—The mere filing and presentation of repeated motions in a case which are thought to be for the purpose of vexation or delay do not constitute contempt of court. (Page 48.)

3. SAME—SUGGESTION OF JUDGE'S DISQUALIFICATION.—It is not a contempt for an attorney to file in court a motion on behalf of his client suggesting the disqualification of the judge to sit in trial of a cause wherein he is related within the fourth degree to some person who has some direct pecuniary interest in the result of the suit, though he is not a party to the record. (Page 48.)

4. JUDGE—DISQUALIFICATION.—Under Const. 1874, art. 7, § 20, and Kirby's Digest, § 1526, providing that judges shall not preside in a trial where either of the parties shall be connected with him by consanguinity or affinity within the fourth degree, a judge is disqualified where a relative within the prohibited degree is directly interested pecuniarily in the result of the suit, as by having a contingent fee therein, although not a party to the record nor bound by the judgment. (Page 50.)

Certiorari to Yell Chancery Court; *Jeremiah G. Wallace*, Chancellor; judgment quashed.

*Jo Johnson, pro se.*

Wilful disregard or disobedience of public authority constitutes contempt. Bouv. Law Dict. Disrespect: wilful disregard of the authority of the court. Anderson, Law Dict. Contempt is disorderly or insolent language or behavior in the presence of the court. 3 Am. & Eng. Law, 1st Ed. p. 777. Petitioner had the right to file the motion suggesting the disqualification of the chancellor in this particular instance.

*William F. Kirby,* Attorney General, and *Dan'l Taylor,* for respondent.

Contempt may be shown either by language or manner. 9 Cyc. 7. The trial judge can best estimate the manner, spirit and intention of acts done in the presence of the court. Things in the light of surrounding circumstances, not apparent upon the record, might be grossly insulting, and tend to destroy respect for judicial action, which, to this court, might seem indifferent. 35 Ark. 458. Where there is not plain and apparent abuse of authority in matters of contempt, this court ought not to interfere. *Id.*

McCulloch, J. Petitioner is an attorney at law, and procured from this court a writ of certiorari to bring up for review the record of a judgment of the chancery court of Yell County against him for contempt. The judgment, which explains the whole proceedings, is as follows (omitting caption):

"Now on this day, the defendant Jo Johnson being plaintiff's solicitor in a cause pending in this court wherein W. T. Dunbar is plaintiff and Joseph Evins and others are defendants and cross complainants, the said Johnson appearing for and representing the plaintiff W. T. Dunbar, and the said Johnson having filed and argued before the court a number of other vexatious motions in said cause, which had been overruled by the court, thereupon the said Johnson offered to file the following motion in said cause, to-wit:

" 'Comes the plaintiff by his attorney and suggests to the court that the attorney's fee of Judge R. C. Bullock, one of the attorneys for the said cross-complainant, as well as the fees of all the attorneys for said cross-complainant, largely and substantially, if not wholly, depend upon the rendition of a judgment

and decree in this case in favor of said cross-complainant; that said R. C. Bullock is related to the judge of this court within the fourth degree of consanguinity. Wherefore plaintiff prays that the said Bullock be interrogated as to his interest in the subject-matter of this suit and in the determination of same, so that the said judge may decline to sit at the hearing of this case, if found proper so to decline.

"'Jo Johnson, attorney for plaintiff.'

"Thereupon the court assessed a fine of fifty dollars against the said Jo Johnson for the contempt of court.

"It is therefore ordered and adjudged by the court that the State of Arkansas do have and recover of and from the said Jo Johnson the sum of fifty dollars, as for fine and penalty for contempt, and all her costs in this behalf laid out and expended, and that the State of Arkansas have execution therefor; and said Johnson excepts."

This court in Ex parte *Davies,* 73 Ark. 358, settled the practice to be followed in reviewing judgments rendered by circuit and chancery courts for contempts committed in the presence of the court.

Judge RIDDICK, speaking for the court in that case, said: "As contempts committed in the presence of the court may be summarily tried and prosecuted without process or pleading of any kind, it is highly proper that the judgment should contain a finding of the facts constituting the contempt. Chief Justice Ruffin of the Supreme Court of North Carolina, in a case of this kind before that court, said that 'it befits every court which has a proper tenderness of the rights of the citizens and a due respect to its own character to state in its judgment explicitly the facts constituting the contempt, not suppressing those on which the person might be entitled to be discharged, more than it would insert others which do not exist, for the sake of justifying the commitment.' Ex parte *Summers,* 5 Iredell's Law, 149. He shows clearly and convincingly the reasons why such a finding of facts should be made in the judgment, but he held that the absence of such a finding did not render the judgment void." Judge Riddick also added this, with respect to a judgment for contempt: "When a judgment of that kind is entered against an offender, the statements in the record must be taken

in a proceeding of this kind as absolutely true, and we cannot interfere unless it clearly appears that the judgment is wrong." ·

We therefore indulge the conclusive presumption that the learned chancellor recited in his judgment all of the facts constituting the alleged contempt of court, and, as the face of the judgment does not disclose any finding that the petitioner's manner in presenting his motion was discourteous or disrespectful to the court, or that he was guilty of any contemptuous conduct, unless the presentation of the motion be found, in itself, to constitute contempt, we presume that there was no objectionable conduct other than the mere filing of the motion.

There is a recital, however, that petitioner had previously filed in the case and argued before the court other vexatious motions. When these motions were filed, the judgment does not recite, nor does it declare that petitioner had been guilty of contempt in filing any of them. The mere filing and presentation of a motion or repeated motions which are thought to be for the purpose of vexation or delay do not constitute contempt of court. The court may, in the exercise of its inherent powers, strike them from the files because they are not presented to subserve the ends of justice and are merely for vexation or delay, but, unless they are presented in a contemptuous or disrespectful manner, or unless they contain matter which of itself constitutes contempt, the court cannot treat them as contemptuous merely because they are thought to be for vexation or delay.

Take, for instance, motions for continuance or change of venue. The court may well treat repeated motions of this kind as dilatory in their purpose, and refuse to hear them; but if they are presented in a respectful manner, it shows no contempt of court, and cannot be so treated unless they involve some violation of the court's orders, so as to amount to an obstruction of the administration of justice.

We have then the question presented whether or not it is contemptuous *per se* for an attorney at law to file in court a motion for his client suggesting the disqualification of the judge to sit in trial of a cause wherein he is related within the fourth degree to some person who has some direct pecuniary interest in the result of the suit, but is not a party to the record.

It goes without controversy that when an attorney files a

paper reflecting upon the integrity, fairness and impartiality of the judge he thereby makes himself guilty of contempt of court. An affidavit or motion filed for the purpose of disqualifying the judge or obtaining a new trial on account of alleged prejudice or bias, or for the purpose of changing the venue on that ground, would undoubtedly be a contempt of court where the statute does not make it grounds for the motion. *Harrison* v. *State,* 35 Ark. 458; In re *Jones,* 103 Cal. 397.

But we cannot see how the filing of a motion suggesting the disqualification of a judge on alleged grounds which do not reflect on his integrity or impartiality can be held to be contempt, even if the suggested grounds of disqualification do not amount to such in law. The attorney would, at least, have the right to raise and present in a respectful manner to be passed upon the question of the judge's disqualification, without laying himself open to a charge of contempt, provided the grounds alleged did not reflect upon the integrity or impartiality of the judge so as to bring the court into contempt. It is in no wise calculated to bring a judge into contempt before the public or to lower the dignity of his position by suggesting his disqualification in a case because of relationship to a person directly interested in the subject-matter of the litigation. Conceding it to be true that a suggestion of a judge's disqualification by reason of his relationship to an interested party implies, to some extent, the possibility of his partiality to that side, yet a suggestion of that kind does not reflect upon the personal integrity of the judge or his inclination to be fair and impartial, like a suggestion that he is so prejudiced against a party that he cannot or will not hear the case fairly or impartially.

We are of the opinion, moreover, that the motion suggested legal grounds for disqualification of the chancellor, and that for that reason also he was not guilty of contempt in filing the motion.

It is alleged in the motion that one of the attorneys in the case was related to the chancellor within the fourth degree of consanguinity, and that the attorney had a contingent interest in the amount sought to be recovered.

The Constitution of the State provides that "no judge or justice shall preside in the trial of a cause in the event of which

he may be interested, or where either of the parties shall be connected with him by consanguinity or affinity within such degree as may be prescribed by law," etc.  Const. 1874, art 7, § 20.

The statute fixes the fourth degree as the line of prohibition. Kirby's Digest, § 1526.  While the Constitution speaks of a "party" to the cause, we are of the opinion that, both upon sound reason and according to the weight of authority, the word should not be construed in a technical and restricted sense to mean a party to the record, but it should be held to mean any one who is pecuniarily interested directly in the result of the suit, although not a party to the record and not necessarily bound by the judgment. Any other construction totally disregards the spirit and defeats the purpose of the constitutional prohibition, for if a judge may be influenced at all in his judgment by the fact that a person who is directly interested in the result of the suit is related to him, the potency of the influence is not lessened by the absence of the related party from the record.  For a very thorough and convincing discussion of this question see the following authorities: *Roberts* v. *Roberts,* 115 Ga. 259; *Crook* v. *Newborg,* 124 Ala. 479; *Howell* v. *Budd,* 91 Cal. 242; *Moses* v. *Julian,* 45 N. H. 52.

We are aware that the authorities are not entirely harmonious on this question, but we are satisfied, after careful consideration, that the conclusion we have reached is in accord with sound reason and a majority of the adjudged cases.

Upon the whole case we conclude that the learned chancellor erred in adjudging petitioner to be in contempt, and his judgment is therefore set aside and quashed.