Napoleon FULLER *v.* STATE of Arkansas

CR 74-49                                           511 S.W. 2d 474

Opinion delivered July 15, 1974

*Guy Jones, Jr.,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Richard Mattison,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. Appellant pleaded guilty to first degree murder after the state waived the death penalty. He was sentenced to life imprisonment in accordance with a jury verdict. Appellant now seeks postconviction relief pursuant to Criminal Procedure Rule 1. Following an evidentiary hearing, the trial court denied his petition. One of his contentions on appeal, through his court appointed appellate counsel, is that the trial court erred in failing to make findings of fact and conclusions of law as is required by Rule 1. We agreed and remanded in *Fuller* v. *State,* 256 Ark. 133, 505 S.W. 2d 755 (1974), for compliance with that requirement which is now met. Therefore, we proceed to consider appellant's contention that the court erred in failing to grant a new trial because of the father-in-law/son-in-law relationship between the trial court judge and appellant's court appointed attorney. We do not agree.

Art. 7 § 20 of our Ark. Const. (1874) provides in pertinent part:

No judge or justice shall preside in the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by consanguinity or affinity, within such degree as may be prescribed by law . . . .

Ark. Stat. Ann. § 22-113 (Repl. 1962) reads:

No judge of the circuit court, justice of the county court,

> judge of the court of probate or justice of the peace, shall sit on the determination of any cause or proceeding in which he is interested, or related to either party within the fourth degree of consanguinity or affinity . . . . .

We have interpreted the word "party" in the constitution and statute in a broad manner, refusing a technical and restricted application, and applied the term to anyone who is pecuniarily interested directly in the result of the suit. *Johnson* v. *State*, 87 Ark. 45, 112 S.W. 143 (1908). We have also held that a judge should have excused himself at a murder trial where the victim was related to the judge within the fourth degree of affinity, the judge's wife's second cousin, making the judge *interested* in the outcome of the case within the meaning of the statute. *Byler* v. *State*, 210 Ark. 790, 197 S.W. 2d 748 (1946). See also *Black* v. *Cockrill, Judge*, 239 Ark. 367, 389 S.W. 2d 881 (1965). If the prohibited degree of relationship were known by a litigant before trial, the issue cannot be raised thereafter since one is not allowed to speculate on the result of a trial. *Byler* v. *State, supra*. In the case at bar, the appellant was unaware of the relationship between the court and the court appointed attorney.

In criminal cases the majority view is that the relationship alone will not disqualify a judge when a relative is an attorney, under statutes similar to ours and requiring interpretation of the word "party." See e.g. *Dennard* v. *State*, 46 Ga. App. 513, 168 S.E. 311 (1933), App. Transf. 176 Ga. 361, 168 S.W. 310 (1933), involving the relationship of a second cousin prosecutor, and *People* v. *Whitney*, 105 Mich. 622, 63 N.W. 765 (1895), involving a brother-in-law prosecutor.

In the case at bar, however, suffice it to say that the appellant has utterly failed to demonstrate any possible prejudice because of the relationship between his court appointed counsel and the trial judge. Appellant was represented by two court appointed attorneys. The first one requested the court to appoint another attorney to assist him in the defense of the case. This resulted in the son-in-law's appointment. Admittedly, each of the attorneys counseled and advised with the appellant preceding the trial date. At that time the court was advised of the negotiated plea. It was

presented through the first court appointed attorney. In response to a very thorough interrogation by the court, the appellant stated that he had been advised of his rights; he understood he was charged with first degree murder in the death of his wife and was guilty as charged; he understood the death penalty was being waived and "I understand that I will get life;" no one had coerced, threatened or promised him anything to enter a plea of guilty; and, further, his plea was his own decision after advising with counsel. The court's inquiry was ended by asking "Do you want to do this?" to which the appellant responded "Yes." The fact that any statutory fee the court appointed attorneys received was to be fixed by the trial judge is not significant since that fee was allowable regardless of the outcome of the case. Ark. Stat. Ann. § 43-2417 (Supp. 1973). In fact, no latitude for prejudice existed in the instant case. The death penalty being waived the only remaining sentence appellant could receive upon his voluntary plea to first degree murder was life imprisonment. Ark. Stat. Ann. § 41-2227 (Repl. 1964).

Appellant also contends that the procedure required by § 43-2152 in murder cases was not followed. That section was repealed by Act 124, 1971, (§ 43-2108.1, .2) and was therefore inapplicable. *Strouthers* v. *State*, 252 Ark. 538, 479 S.W. 2d 870 (1972).

Neither can we agree with appellant's assertion of reliance upon assurances of his court appointed attorneys that upon a plea of guilty he would receive a sentence not in excess of 21 years. His testimony to this effect was clearly refuted by both lawyers who testified that they thoroughly advised him as to the various degrees of homicide, the possible sentences and never told him he would receive a term of years as a sentence. Their testimony indicated no recommendation of a guilty plea to first degree murder. The attorneys informed appellant the state would waive the death penalty and accept a life sentence. The decision was left completely to the appellant. Their testimony is buttressed by the inquiry of the trial court as previously indicated.

After a thorough review of the entire proceedings, we are of the view there was no violation of appellant's constitutional

.rights and, therefore, the trial court correctly denied the petition.

Affirmed.